IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ALEJANDRO MENDOZA,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. ____5:21-cv-903__ |
| | § | |
| **FOOT LOCKER RETAIL, INC.,** a | § | |
| subsidiary of **FOOT LOCKER, INC.,** | § | |
| | § | |
| *Defendant*. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE:**

NOW COMES Plaintiff Alejandro Mendoza (hereinafter referred to as Plaintiff) in the above referenced matter, complaining of and about Foot Locker Retail, Inc., a subsidiary of Foot Locker, Inc. (hereinafter referred to as Defendant), and files this Original Complaint, showing the following to the Court:

**Nature of the Action**

1. This is an action brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*., on the grounds that Plaintiff was discriminated against and suffered a hostile work environment on the basis of his age, and Defendant retaliated against Plaintiff because Plaintiff made protected complaints during his employment with Defendant. The action is to correct and recover for Defendant's unlawful employment practices on the basis of Plaintiff's age, including age-based discrimination, age-based harassment, and retaliation based on Plaintiff's protected activities arising after his

1

complaints about the age discrimination, harassment, and retaliation he suffered while employed with Defendant.

## Parties

2.  Plaintiff is an individual residing in Medina County, Texas. Plaintiff was employed by Defendant, who conducts business within Bexar County, Texas. Plaintiff is a citizen of the State of Texas and the United States and is 61 years of age.

3.  At all relevant times, Defendant has been a corporation continuously doing business in the State of Texas and has continuously had at least 20 employees.

4.  At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of ADEA, 29 U.S.C. §§ 630(b), (g) and (h).

## Jurisdiction and Venue

5.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 on the basis of federal question due to Defendant's violations of the ADEA.

6.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because Defendant committed the unlawful employment practices within the judicial district of the United States District Court for the Western District of Texas, San Antonio Division.

## Exhaustion of Administrative Remedies

7.  On March 6, 2020, Plaintiff filed a Charge of Discrimination (Charge No. 451-2020-01793) with the U.S. Equal Employment Opportunity Commission (EEOC) against Defendant for age discrimination, age-based hostile work environment, and retaliation. Defendant unlawfully terminated Plaintiff's employment on June 19, 2019, and

Plaintiff, therefore, timely filed his EEOC charge within 300 days of Defendant's unlawful employment action.

8.      Subsequently, the EEOC issued Plaintiff a Notice of Right Sue, dated June 25, 2021, and which Plaintiff received electronically from the EEOC on June 28, 2021. Plaintiff, therefore, timely files this lawsuit within ninety (90) days of receiving the Right to Sue notice.

## Factual Background

9.      Plaintiff, who is sixty-one (61) years old, began working for Defendant in 1983 as an Assistant Store Manager. Defendant steadily promoted Plaintiff, culminating in his selection as a District Sales Manager in 2004. As a District Sales Manager, Plaintiff oversaw the daily operations of 17 stores producing $38 million in revenue in the Specialty Retail Sales Division under four different store banners (Foot Locker, Kid's Foot Locker, Lady Foot Locker, and Footaction). Between 2003 and 2017, Plaintiff consistently received positive employment evaluations and was never placed on a performance improvement plan.

10.     In the 2018 performance appraisal, Christina Deanda-Sarrat, Regional Vice President, who was Plaintiff's direct supervisor and appraiser, scored Plaintiff overall as "Needs Attention," despite Plaintiff only receiving an "N" rating in one of the ten appraisal categories (Wage / Hours). Plaintiff achieved above average ratings (M+ and E (the highest rating) in the "Sales" and "Shrink" categories). In short, the math simply does not add up to Plaintiff receiving an overall "N" rating in this evaluation.

11. This 2018 appraisal was a significant departure from Plaintiff's previous appraisals, in which there was no indication of any concerns about Plaintiff's job performance.. Significantly, however, in the 2018 performance appraisal, under the heading of "Manager Comments" in Plaintiff's 2018 performance appraisal, Ms. Sarrat stated that Defendant's "mission statement is to inspire and Empower Youth Culture, [and] a shift in our culture will come only if you lead the way."

12. Ms. Sarrat's emphasis on Defendant's "Youth Culture" in Plaintiff's 2018 performance appraisal was the first overt indication that there was a plan to terminate Plaintiff because of his age. On November 30, 2018, Plaintiff received an Executive Development Review (EDR) form from Ms. Sarrat, which indicated Plaintiff's "Talent Category" as "Needs Attention." Ms. Sarrat rated Plaintiff as "Usually" and "Sometimes" in terms of meeting expectations related to "Attributes" on the EDR form (*e.g.*, "Be A Pro," "Break Records," "Play to Win," *etc.*). This, coupled with Plaintiff's final 2018 performance appraisal, was the first time that Plaintiff had been alerted to any alleged deficiencies in his job performance, and the "Key Development Actions" that Ms. Sarrat listed as expectations were vague, confusing, and entirely subjective. "Be A Pro", "Break Records" and "Play to Win" can mean anything, and were used as a pretext for the discriminatory conduct against Plaintiff.

13. Ms. Sarrat's treatment of Plaintiff continued to deteriorate moving into 2019. On March 7, 2019, Plaintiff attended a regional seminar. While at the seminar, and in front of all of the other District Managers in attendance, Ms. Sarrat asked Plaintiff if they were within budget. Plaintiff opened his laptop to get the budget information to provide to Ms.

Sarrat and asked her to, "H-hold on please." Ms. Sarrat responded, "There you go, can't get an answer, blah blah blah." Later, at this same meeting, Ms. Sarrat stated, "All of you are in talent jail. I am not in talent jail. I have this young DMIT [District Manager in Training] willing to take over any of your positions, and willing to go anywhere in the country." Plaintiff documented this exchange by letter to Defendant's Human Resources Department and Ms. Sarrat's supervisors dated May 6, 2019, long before his termination on June 19, 2019.

14.   On April 5, 2019, Ms. Sarrat provided Plaintiff with a Performance Improvement Plan (PIP), in which Plaintiff was given sixty (60) days to achieve certain "Objectives" listed in the PIP. The PIP referenced the earlier-issued EDR as purported support for Plaintiff's supposed "History of Current Below Standard Behavior," and the PIP maintained the opaque, unascertainable, and nonsensical performance goals of the earlier document. Most notably, however, Ms. Sarrat accused Plaintiff, in writing, of "[n]ot evolving as a change agent . . . ," which is a thinly-veiled reference to Ms. Sarrat's animus regarding Plaintiff's age and Defendant's apparent belief that Plaintiff did not conform to Defendant's "Youth Culture."

15.   On April 8, 2019, Plaintiff emailed Ms. Sarrat, copying John Miller, Regional Director of Human Resources, to express his surprise at receiving the PIP. Plaintiff explained that he was disappointed by Ms. Sarrat's frustration when he asked for clarification regarding his alleged below standard job performance. During their meeting on April 5, 2019, concerning the PIP, Ms. Sarrat instructed Plaintiff not to "fall behind," told him he needed "to evolve," and, most egregiously, informed Plaintiff, "Tenure is good,

5

but it could also be bad," that the "company is changing," and that he needed "to stay in tune with today's business." Given Ms. Sarrat's antagonism toward Plaintiff and her tacit admissions that she believed Plaintiff to be too old to be a successful manager in Defendant's fast changing "Youth Culture," Plaintiff complained that he believed his "age and tenure" was the root cause of Ms. Sarrat's unacceptable treatment of him. Plaintiff expressly complained that he was the victim of discrimination, intimidation, and retaliation. Despite engaging in this protected oppositional activity, Defendant allowed Ms. Sarrat's overt discrimination, harassment and retaliation to continue unabated.

16. In spite of Ms. Sarrat's assurance that Plaintiff's performance under the PIP would be evaluated for sixty (60) days, Ms. Sarrat modified the PIP merely one week later on April 12, 2019. This materially altered the PIP, in its articulation of Plaintiff's alleged below standard job performance, including referencing Ms. Sarrat's supposed observations of and discussions with Plaintiff on dates which had not yet occurred. Beyond Ms. Sarrat's apparent clairvoyance, the updated PIP unreasonably ramped up and muddled the performance objectives that Plaintiff was required to achieve to successfully complete the PIP. Clearly, Ms. Sarrat hoped that the updated PIP, with its prolix yet somehow still unclear performance objectives, would set the Plaintiff up for failure and provide Defendant with a pretext to terminate him because of his age and in retaliation for his protected complaint of age discrimination.

17. On May 1, 2019, Plaintiff again emailed Mr. Miller and Ms. Sarrat's supervisors regarding Ms. Sarrat's discriminatory, harassing, and retaliatory behavior that occurred the previous day. Plaintiff explained that Ms. Sarrat's harassment and

intimidation of him was not an isolated incident, but just another example of Ms. Sarrat's discriminatory, hostile, and retaliatory treatment of him since receiving the 2018 performance appraisal.

18. Plaintiff disclosed that Ms. Sarrat's unconscionable behavior led him to seek medical attention for chest pain, headaches, and uncontrolled bowel movements. Plaintiff even sought treatment in the emergency room, upon the recommendation of a treating physician, caused by Ms. Sarrat's overtly discriminatory and retaliatory conduct.

19. On May 6, 2019, Plaintiff again reached out for help in ameliorating Ms. Sarrat's discriminatory and retaliatory behavior. Specifically, Plaintiff again wrote to Mr. Miller, giving a detailed analysis of Ms. Sarrat's discriminatory and hostile treatment of him. Plaintiff explicitly articulated Ms. Sarrat's ageist comments and stated that he felt he was being discriminated against through "continuous emotional and verbal harassment." Plaintiff explained that he believed Ms. Sarrat's plan to was to set him up for failure.

20. Defendant did nothing substantive to address Plaintiff's protected complaints of age discrimination and harassment at the hands of Ms. Sarrat. Instead, Defendant notified Plaintiff that its "investigation" was unable to substantiate his concerns regarding Ms. Sarrat. Defendant's deliberate indifference of Ms. Sarrat's unlawful behavior allowed Ms. Sarrat's discriminatory and retaliatory plan to come to fruition by terminating Plaintiff on June 19, 2019. Ms. Sarrat's scheme to conform Defendant's management to the "Youth Culture" of the company culminated in the hiring of Ricardo Ramirez as Plaintiff's replacement. Mr. Ramirez is approximately fifteen (15) to twenty (20) years younger than Plaintiff.

## Causes of Action

### ADEA-Discrimination

21. Plaintiff realleges and incorporates herein by reference the allegations asserted in the foregoing paragraphs 9-20.

22. The ADEA prohibits discrimination targeted at an employee over 40 years of age on the basis of his age.

23. Defendant is an employer within the meaning of the ADEA.

24. Plaintiff was an employee within the meaning of the ADEA at all times relevant to his Complaint.

25. Plaintiff, an employee over 40 years of age, belongs to a class protected under the ADEA.

26. Defendant discriminated against Plaintiff's terms, conditions, and privileges of his employment by conjuring a pretextual basis for terminating his employment based on his age, in violation of the ADEA.

27. Defendant discriminated against Plaintiff based on his age intentionally and with reckless disregard to Plaintiff's rights under the ADEA.

28. The unlawful practices committed by Defendant directly caused Plaintiff's damages, as set forth below.

### ADEA-Hostile Work Environment

29. Plaintiff realleges and incorporates herein by reference the allegations asserted in the foregoing paragraphs 9-20.

30. Plaintiff claims he would not have been harassed by Ms. Sarrat, with the intent to force him to quit, but for his age.

31. Plaintiff alleges Ms. Sarrat engaged in harassment based on his age, which harassment altered the terms and conditions of his employment with Defendant, and created a hostile work environment.

32. Plaintiff made Defendant's human resources officials aware of Ms. Sarrat's harassment, but Defendant's human resources took no corrective action to eliminate the discriminatory and retaliatory behavior. Defendant failed to take any remedial action to end the harassment against Plaintiff. Ms. Sarrat made every attempt to force Plaintiff to either force him quit his employment or set him up for failure. She made negative references to his age, and Ms. Sarrat's harassment amounted to a material change in the terms and conditions of Plaintiff's employment. Defendant, despite Plaintiff's protected complaints aimed at stopping Ms. Sarrat's hostile and abusive conduct, did nothing to stop the objectively hostile work environment Ms. Sarrat inflicted upon Plaintiff.

33. Defendant's agents acted willfully in creating, and not remediating, the hostile work environment, which was based on Plaintiff's age. Defendant knew its behavior violated the ADEA.

34. The unlawful practices committed by Defendant directly caused Plaintiff's damages, as set forth below.

### ADEA-Retaliation

35. Plaintiff realleges and incorporates herein by reference the allegations asserted in the foregoing paragraphs 9-20.

36. The ADEA prohibits retaliation towards on employee because that employee opposed age discrimination.

37. Defendant is an employer within the meaning of the ADEA.

38. Plaintiff was an employee within the meaning of the ADEA at all times relevant to his Complaint.

39. Plaintiff engaged in protected activity by opposing age discrimination by Defendant.

40. Plaintiff was subjected to an adverse action (termination) after the protected activity took place.

41. There was a causal connection between Plaintiff's protected complaints to Defendant's human resources and Defendant's termination of him.

42. The unlawful practices committed by Defendant directly caused Plaintiff's damages, as set forth below.

## **Jury Demand**

43. Plaintiff hereby makes a demand for a trial by jury on all issues, claims, and defenses in this action.

## **Prayer**

Plaintiff respectfully requests that the above-named Defendant be cited to appear in this matter and that, after trial by jury, he be awarded:

i. Lost wages, employment benefits, and other compensation lost to him as a result of defendant's discriminating against him on the basis of his age, and prejudgment interest;

ii. Liquidated damages doubling the award of interest, wages, lost employment benefits, and other compensation lost to him as a result of Defendant's willful discrimination against him on the basis of his age;

iii. Liquidated damages in the maximum amount allowed by law;

iv. Reinstatement to the job of District Sales Manager (or to a comparable job) and back pay or, in the alternative, front pay in lieu thereof;

v. Reasonable attorney's fees, expert witness fees, expenses, and costs of this action;

vi. Prejudgment and post-judgment interest as allowed by law; and

vii. Such other and further legal and/or equitable relief to which Plaintiff may be justly entitled, as this Court may deem proper.

Respectfully submitted,

KARCZEWSKI BRADSHAW SPALDING

_/s/ C. Cory Rush_____
C. Cory Rush
Attorney-in-Charge
State Bar No. 24074989
Fed. I.D. No. 1125441
crush@kbslawgroup.com
3700 Buffalo Speedway, Suite 560
Houston, Texas 77098
Telephone: (713) 993-7066
Facsimile: (888) 726-8374

Respectfully submitted,

*/s/ Maureen Farrell*

---

Maureen Farrell
Muery & Farrell PC
TBN: 24076378
1095 Evergreen Circle, Ste 200
The Woodlands, TX 77380
Tel: 832.626.1692
Maureen@texanlegal.com


ATTORNEYS FOR PLAINTIFF
ALEJANDRO MENDOZA