**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ALEJANDRO MENDOZA, | § | |
| *Plaintiff* | § | |
| | § | SA-21-CV-00903-XR |
| -vs- | § | |
| | § | |
| FOOT LOCKER RETAIL, INC., A | § | |
| SUBSIDIARY OF FOOT LOCKER, INC., | § | |
| *Defendant* | § | |

## ORDER

On this date, the Court considered Defendant's motion for summary judgment (ECF No. 32), Plaintiff's response (ECF No. 34), and Defendant's reply (ECF No. 36). After careful consideration, Defendant's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Plaintiff Alejandro Mendoza brings this employment discrimination suit against Defendant Foot Locker Retail, Inc. under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq*. ECF No. 1. Plaintiff alleges (i) age discrimination, (ii) retaliation, and (iii) a hostile work environment. *Id.* ¶¶ 21–42.

Plaintiff, who was fifty-nine years old at the time of his termination, joined Defendant's predecessor company, Kinney Shoes, as a part-time stock person in 1983. *Id.* ¶ 9; ECF No. 34 at 5. During his tenure, Plaintiff received several promotions, culminating with his elevation to District Sales Manager in 2004. ECF No. 1 ¶ 9. Plaintiff's responsibilities in this position included overseeing 17 stores under four different store banners (Foot Locker, Kid's Foot Locker, Lady Foot Locker, and Footaction). *Id.* Plaintiff asserts that between 2003 and 2017, he consistently received positive employment evaluations. *Id.*

1

Plaintiff alleges that this trend of positive reviews reversed in April 2018. ECF No. 34 at 6. At this time, Plaintiff's direct supervisor, Regional Vice President Christina Sarrat, completed Plaintiff's annual evaluation for the previous year and assigned him the second-lowest score of "M-" ("Meets Expectations Minus"). *Id.* During this period, Plaintiff testified at deposition that his relationship with Sarrat deteriorated, with Sarrat referencing Plaintiff's age during "[a]lmost every" one of their work-related visits. *Id.*; ECF No. 34-1, Ex. A at 177–78.

In October 2018, Sarrat met with Plaintiff to discuss his Executive Development Review ("EDR"). During this conversation, which Plaintiff recorded, Sarrat expressed her "concern" about whether people with "25/30 years" of tenure have grown "complacent." ECF No. 34 at 7; ECF No 42-1 at 2. Sarrat also referred to one of Plaintiff's senior store managers, Lisa Mays, as Plaintiff's "40-something" star in the context of criticisms about Mays' ability to create "connectivity" with store customers. ECF No. 34 at 7; ECF No. 42-1 at 4.

On March 7, 2019, Plaintiff attended a regional seminar, where Sarrat allegedly criticized Plaintiff in front of other District Managers for not immediately having information regarding his budget. ECF No. 1 ¶ 13. Later at this same seminar, Sarrat allegedly stated in front of several District Managers and human resources representatives that she had a "young DMIT [District Manager in Training] willing to take over any of your positions." ECF No. 34 at 7–8; ECF No. 34-3, Ex. B at 53. Plaintiff testified that Sarrat made this comment while looking at him. ECF No. 34-1, Ex. 1 at 91.

Sometime before April 2019, Sarrat provided Plaintiff with his 2018 annual performance evaluation, which assigned him an "N" rating ("Needs Improvement"). ECF No. 34 at 8. Sarrat testified that the decision to assign an N rating, the lowest possible score, was made in collaboration with her direct supervisor, Shawn Berg. ECF No. 32 at 3. Plaintiff asserts that Sarrat

improperly awarded him an "N" rating because he received an "M-" or higher rating in all but one category of his evaluation. ECF No. 34 at 8.

On April 5, 2019, Sarat placed Plaintiff on a Performance Improvement Plan (PIP). ECF No. 1 ¶ 14. Defendant asserts that it issued this PIP because of Plaintiff's poor performance appraisals, his prior EDR ratings, and Sarrat's assessments of Plaintiff during her trips to his district. ECF No. 32 at 3. Sarrat collaborated with Berg, Human Resources Director Mandy Garza, and Fair Employment Practices ("FEP") Manager John Miller to reach this decision. *Id.* The PIP informed Plaintiff that he was required to improve his job performance by satisfying specific objectives in 60 days or he could face termination. *Id.* Sarrat drafted the PIP in partnership with Garza. *Id.*

On April 8, 2019, Plaintiff emailed Sarrat and Miller to express his "absolute surprise" at receiving the PIP. ECF No. 1 ¶ 15; ECF No. 34-2, Ex. A-1 at 32. Plaintiff wrote, "my belief is that my age and tenure are a factor to your letter and review. I feel discriminated, intimidated, and retaliated." ECF No. 34-2, Ex. A-1 at 32. The parties dispute how Defendant responded to this email. According to Defendant, Miller forwarded Plaintiff's email to FEP employee, Jennifer Burns, and FEP opened an investigation, which, after conducting interviews with all other district managers in Sarrat's district, issued a report of "no findings." ECF No. 32 at 7.

Plaintiff counters that Defendant departed from the policies articulated by Defendant's Rule 30(b)(6) corporate representative in numerous ways. Specifically, Plaintiff asserts that instead of following standard procedure of assigning a counselor, recording the investigation in Defendant's case management system, and providing Plaintiff with periodic updates, Defendant only opened a "Job Performance" case for "Disciplinary Action" on May 14, 2019, nearly five weeks after Plaintiff's complaint. ECF No. 34 at 11. Plaintiff contends that the purpose of the

subsequent investigation was to evaluate Sarrat's concerns with his performance, rather than Plaintiff's age discrimination allegations. *Id.* at 11–13.

On April 12, 2019—seven days after providing Plaintiff with the original PIP—Defendant provided an amended PIP ("Amended PIP") to offer Plaintiff the additional information he requested as to what was expected of him. ECF No. 32 at 3-4. Shortly thereafter, Sarrat and Garza met with Plaintiff for a second time to discuss the Amended PIP.  ECF No. 32 at 4.

On June 19, 2019, Defendant (through Human Resources employee Gave Salazar) terminated Plaintiff's employment. *Id.* at 5. Defendant asserts that it terminated Plaintiff because Plaintiff failed to meet the objectives outlined in the Amended PIP, refused to participate in the PIP process, and responded in an argumentative and aggressive fashion to any feedback. *Id.* Ultimately, Defendant replaced Plaintiff with Ricardo Ramirez, a 48-year-old who was approximately 11 years younger than Plaintiff. *Id.*

On August 24, 2023, Defendant filed a motion for summary judgment seeking dismissal of all Plaintiff's claims. ECF No. 32. Plaintiff filed its response on September 21, 2023 (ECF No. 34), and Defendant filed its reply on October 12, 2023 (ECF NO. 36). On February 9, 2024, the Court heard oral arguments in this matter.

## DISCUSSION

### I.     Standard of Review

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the

burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested

witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II.   Analysis

### a.   ADEA Discrimination

Under the ADEA, employers cannot "discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To succeed on a claim that a termination violates the ADEA, an employee "must prove that age was the 'but-for' cause of the employer's adverse decision." *Paulissen v. MEI Techs., Inc.*, 942 F. Supp. 2d. 658, 663 (S.D. Tex. 2013) (citing *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 177 (2009)). Proving that age was a "motivating factor" for the decision is not sufficient to establish an ADEA violation. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019); *see also Moss v. BMC Software, Inc.*, 610 F.3d 917, 928 (5th Cir. 2010) ("[T]he Supreme Court rejected the application of Title VII's 'motivating factor' standard to ADEA cases."). While but-for cause does not mean sole cause, age must be the factor that makes the difference. *Straughan v. Vibra Rehab. Hosp. of El Paso LLC*, No. EP-19-CV-241-KC, 2020 WL 10758973, at *9 (W.D. Tex. Nov. 29, 2020).

In the Fifth Circuit, a plaintiff can demonstrate age discrimination "in two ways, either through: direct evidence or by an indirect or inferential [circumstantial] method of proof." *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (quoting *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004). If an employee lacks direct evidence of age discrimination, courts apply the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp.*

*v. Green*, 411 US 792, 802-05 (1973); *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (noting "circuit precedent applying *McDonnel Douglas* to age discrimination cases"). Under the *McDonnell Douglas* framework, a plaintiff relying on circumstantial evidence must put forth a prima facie case of age discrimination. *Berquist*, 500 F.3d at 349. To establish a prima facie case of age discrimination, "a plaintiff must show that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Id*. (citations omitted).

If the plaintiff puts forward a prima facie case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the employment decision. *Id*. If the employer meets its burden, then the burden shifts back to the plaintiff to present substantial evidence that the employer's reason was a pretext for discrimination. *Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 316 (5th Cir. 2004); *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

### 1.  The Prima Facie Case

There is no genuine dispute of material fact as to whether Plaintiff satisfies the first three elements of a prima facie case of discrimination under the ADEA. Defendant does not dispute that Plaintiff is within the protected class because he was terminated at fifty-nine years old. *See generally* 29 U.S.C. § 631(a) (defining the protected class as "individuals who are at least 40 years of age"). Defendant also does not dispute that Plaintiff was qualified for his position, despite noting negative performance reviews beginning in 2018. And Defendant does not dispute that it terminated Plaintiff, which meets the definition of an adverse employment action.

Rather, Defendant asserts that it is entitled to summary judgment because Plaintiff was replaced by an employee, Ramirez, over the age of forty and therefore also a member of the same

protected class. Plaintiff responds that Ramirez was forty-eight years old at the time of his hiring and that this eleven-year age difference is sufficient to satisfy the fourth prong of the ADEA prima facie standard—that is, that Defendant was replaced by someone younger. The Court agrees with Plaintiff.[1]

The Supreme Court explained that the "replacement of one worker with another insignificantly younger, does not raise an inference of age discrimination," but the "fact that a replacement is *substantially* younger than the plaintiff is a far more reliable indicator of age discrimination." *O'Connor v. Consolidated Coin Caterers Corporation*, 517 U.S. 308, 313 (1996) (emphasis added). Although the Fifth Circuit has not defined what constitutes a substantial age difference, it has previously found smaller age differences than the one presented here substantial enough to find that plaintiff articulated a prima facie case of age discrimination. *See Bienkowski v. Am. Airlines, Inc*., 851 F.2d 1503, 1506 (5th Cir. 1988) (determining, pre-*O'Connor*, that five-year age difference, although a "close question," was sufficient to support the district court's assumption that a prima facie case had been established); *see also Glasmire v. Public Storage*, No. 4:11–CV–748–Y, 2013 WL 1890363, at *4 (N.D. Tex. May 7, 2013) (finding "the five-plus years' age difference" between plaintiff and his replacement sufficient to "support an inference of discrimination, at least for purposes of [plaintiff's] prima-facie case").

In addition to evidence of a substantially younger replacement, Plaintiff points to his direct supervisor's discriminatory comments as evidence that he was otherwise discharged because of

---

[1] Defendant seems to assert that the Fifth Circuit repudiated Plaintiff's ability to establish a prima facie case by identifying a younger replacement because, in *Norsworthy v. Hous. Indep. Sch. Dist.*, the Fifth Circuit does not explicitly list this as a possible method of advancing a prima facie case. 70 F.4th 332, 337 (5th Cir. 2023); ECF No. 32 at 10. This argument overlooks the fact that the Fifth Circuit is quoting from a case that considered such a "younger replacement" theory. *See Ross v. Judson Indep. Sch. Dist*., 993 F.3d 315, 323 (5th Cir. 2021). Further, subsequent to *Nortsworthy*, the Fifth Circuit has listed "replaced by someone younger" as a method of demonstrating a prima facie case under the ADEA. *See Broussard v. Specialties, L.L.C.*, No. 23-30383, 2023 WL 8613608, at *1 (5th Cir. Dec. 13, 2023). Defendant also asserts that Plaintiff must identify a younger employee who committed the same infraction and was not discharged. ECF No. 32 at 10. But Plaintiff is not asserting a "disparate treatment" claim.

his age. In a case like this one in which Plaintiff relies on circumstantial evidence to prove his case, courts consider a supervisor's discriminatory remarks under a "more flexible" standard whereby the comments must show "(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475 (5th Cir. 2015) (citations omitted). District courts have concluded "a supervisor's ageist comments alone could be sufficient as to the fourth element at the prima facie stage." *Iglesias v. Electrolux Home Care Prods.*, No. 19-CV-30-KC, 2019 WL 6711476, at *8 (W.D. Tex. Dec. 9, 2019)

Specifically, Plaintiff testified that Sarrat harassed him about his age "[a]lmost every time" she visited his district. ECF No. 34-1, Ex. A at 177–78. Plaintiff testified that such ageist comments included, "you're falling behind. You need to adapt;" "[h]ey, getting old is bad, right, Alex;" and "[g]etting old sucks." *Id.* at 28, 79. Plaintiff testified that he did not understand what Sarrat meant by statements like "trends are changing rapidly in the market and you need to adapt" because he alleges that he was meeting all of his measurable key performance indicators. *Id.* at 70–71.

During a meeting between Plaintiff and Sarrat regarding the EDR in October 2018, Plaintiff recorded Sarrat as stating, "I'm a firm believer that experience and tenure is a good thing…but there's always this concern of. You know you have been around for, you know, 25/30 years, whatever it might be…are they complacent, are they?" ECF No. 42 at 1–2.[2] Finally, Sarrat made age-related comments with respect to Plaintiff's team, referring to one of Plaintiff's team members as his "40 something" star who struggled with "connectivity" to customers. *Id.* at 4, 6.

---

[2] The Court notes that Sarrat also stated, "Just I don't think that about you. I think, [y]ou still have a love of the game, I think that's still one of your strengths." ECF No. 42-1 at 2.

On March 7, 2019, Plaintiff also testified that Sarrat stated in front of other District Managers that she had a "young District Manager in Training (DMIT)" willing to take any District Manager's position, while looking at him. ECF No. 34-1, Ex. 1 at 91. As memorialized in an April 8, 2019 email to Sarrat and Miller, Plaintiff also alleges that Sarrat made the following comments to him during her site visits:

- "You need to evolve."

- "You need to stay in tune with today's business."

- "Tenure is good, but it could also be bad."

- "The company is changing."

- "Don't fall behind."

ECF No. 34-2, Ex. A-1 at 32.

The Fifth Circuit has previously held that such "indirect references to an employee's age" can be sufficient to establish a prima facie case of age discrimination. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 353 (5th Cir. 2005) (finding inference that plaintiff was terminated because of his age where supervisor called defendant "inflexible," "not adaptable," and possessing a "business-as-usual attitude"); *see also Rachid*, 376 F.3d at 315 (observing that "[c]omments to look 'sharp' and comments concerning an employee's willingness to 'adapt' to new systems are rather nebulous," but defeated summary judgment in past cases); *Bienkowski*, 851 F.2d at 1506 ("[W]e are unwilling to assume that indirect comments about . . . age and adaptability are not possibly probative of an unlawful discriminatory intent, given the parties' sharp disagreements over the operative facts of [the employee's] performance."). Given that Plaintiff need only make a "minimal showing" in order to put forward a prima facie case, the Court finds that Plaintiff has

identified statements that a jury could construe as demonstrating discriminatory animus. *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).

Plaintiff must also demonstrate that the discriminatory animus was exhibited by an individual primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker. *Goudeau*, 793 F.3d at 475. To establish this, Plaintiff identifies Sarrat's deposition testimony in which she acknowledged playing a role in the final decision to terminate Plaintiff: Sarrat testified that she had a conversation with Miller, in which she alleged that Plaintiff was not participating in the PIP and behaved in an "extremely aggressive, extremely hostile" manner during a phone conversation. ECF No. 34-3, Ex. B at 51. Plaintiff also provides several emails between Sarrat and Miller in which Miller solicits feedback from Sarrat regarding Plaintiff's performance after Plaintiff was put on the PIP. *See e.g.,* ECF No. 34-2, Ex. A-1 at 3–6. More generally, Sarrat exercised influence over Defendant's employment status as his direct supervisor. *See Allen v. United States Postal Serv.*, 63 F.4th 292, 303 (5th Cir. 2023) (finding individual qualified as a person with "influence or leverage over the official decisionmaker" where individual was plaintiff's "supervisor and is the person who conducted [plaintiff's] performance evaluation. She is no 'ordinary worker' lacking influence over [plaintiff's] employment status."). Defendant does not appear to dispute Plaintiff's contention. Accordingly, the Court finds that Plaintiff fulfilled the fourth prong of the ADEA prima facie requirement by both (i) identifying a replacement substantially younger than himself and (ii) identifying ageist comments articulated by his direct supervisor to substantiate his argument that he was otherwise discharged because of his age.

### 2. The Legitimate Basis

Having made his prima facie case, the burden shifts back to Defendant to proffer a legitimate, nondiscriminatory reason for Plaintiff's dismissal. Defendant asserts that it terminated Plaintiff because i) Plaintiff received low performance evaluations, which resulted in a PIP, and ii) Plaintiff failed to comply with the PIP's requirements. ECF No. 32 at 11–12.

First, Defendant states that Plaintiff received an overall rating of M- in his 2017 performance appraisal—one step above the lowest rating—and then received the worst possible overall rating of N in his 2018 performance review. *Id.* at 11. Defendant then placed Plaintiff on a 60-day PIP. *Id.* Second, Sarrat testified that Defendant terminated Plaintiff "because he was not open to the feedback process. He was not participating in the PIP process." ECF No. 32-2 at 38–39. With such evidence of poor job performance and noncompliance with a PIP, the Court finds that Defendant has identified a legitimate, nondiscriminatory reason for terminating Plaintiff. *Benjamin v. Felder Servs., L.L.C.*, 753 Fed. App'x. 298, 302 (5th Cir. 2018) ("We have repeatedly recognized that poor job performance is a legitimate, nondiscriminatory reason for firing an employee."); *Conaty v. Brocade Commun. Sys.*, No. 3:07–CV–1313–D, 2009 WL 937044, at *6 (N.D. Tex. Apr. 7, 2009) ("Noncompliance with a PIP is a legitimate, nondiscriminatory reason for terminating an employee.").

### 3. The Pretext Showing

Because Defendant met its burden at the second step, the burden of persuasion on intentional discrimination returns to Plaintiff. At this stage, "the question is not whether plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext." *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017). The pretext inquiry "asks whether there is sufficient evidence demonstrating the falsity of the employer's explanation, taken together with

the prima facie case, to allow the jury to find that discrimination was the but-for cause of the termination." *Goudeau*, 793 F.3d at 478 (citations omitted). "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence that the employer did not act for the asserted non-discriminatory reasons." *Stennett v. Tupelo Pub. Sch. Dist.*, 619 Fed. Appx. 310, 317 (5th Cir. 2015) (quoting *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1250 (10th Cir. 2002)).

Plaintiff satisfies this burden by providing enough evidence for a jury to conclude that the employer's proffered reasons are likely false. *Miller v. Raytheon*, 716 F.3d 138, 144 (5th Cir. 2013) ("[T]he burden shifts back to the employee to prove either that the employer's proffered reason was not true—but was instead a pretext for age discrimination—or that, even if the employer's reason is true, he was terminated because of his age.")

First, Plaintiff puts forward evidence that undermines the credibility of Defendant's stated justification, such that discriminatory animus was a more likely motivator. *See McMichael,* 934 F.3d at 457. Plaintiff challenges Defendant's argument that he exhibited poor job performance for "years." ECF No. 24 at 20. Plaintiff provides an October 2018 EDR that rates Plaintiff as "Meets Expectations" as recently as 2016. ECF No. 34-5, Ex. B-2 at 1. Prior to this review, Plaintiff was recognized as Foot Locker's District Manager of the Year nationwide as late as 2010 and was the District Manager of the Year for the Southern Region from 2009–2012. ECF No. 34-12, Ex. C at 1. Plaintiff argues that his "poor job performance" only began to be documented in his 2017 performance evaluation, which Sarrat completed on April 16, 2018, a little over a year before his termination. ECF No. 34 at 6; ECF No. 34-4, Ex. B-1 at 1.

Further, Plaintiff questions the legitimacy of the more recent performance evaluations that assigned him lower ratings, asserting that Sarrat corrupted this process with her overly subjective reviews. ECF No. 34 at 3. For instance, on his 2018 performance evaluation, Plaintiff only received the lowest possible grade of "N" in a single sub-category ("1.4 Wages/hours: Maximize store and associate productivity consistently across District") that was weighted as 15% of a category ("Drive Core Business") that constituted 50% of his total score. ECF No. 34-7, Ex. B-4 at 2-3. Nonetheless, Sarrat assigned him an "N" as his "Overall Rating."  ECF No. 34-7, Ex. B-4 at 6.

Likewise, Plaintiff challenges the justification for Defendant issuing him a PIP. Specifically, Plaintiff points out that both the PIP and Amended PIP only list two examples of "History of Current Below Standard Performance:" the October 2018 EDR Review and the "RVP [Regional Vice President] Visits." ECF No. 34-11, Ex. B-8 at 1. But Sarrat testified that an EDR was distinct from a performance appraisal, with an EDR only focused on an employee's leadership ability. ECF No. 34-3, Ex. B at 28. Indeed, during their conversation about the October 2018 EDR, Plaintiff recorded Sarrat saying, "I don't want you to think this is a performance conversation because it's not." ECF No. 42-1 at 1. Further, the "RVP Visits" box indicates "[p]erformance was discussed during the following visits" but two of the three listed dates had not yet occurred at the time of the PIP: August 4, 2019 and September 29, 2019. ECF No. 34-11, Ex. B-8 at 1.

Plaintiff also disputes his failure to meet the PIP's objectives. Neither party provides the Court with company documents concerning Plaintiff's compliance with the PIP: Defendant relies on Sarrat's deposition testimony that Plaintiff failed to meet the PIP objectives, while Plaintiff submitted an affidavit detailing completion of tasks assigned by the PIP and his multiple efforts to discuss his progress with Sarrat. ECF No. 34-12, Ex. C at 5. Plaintiff's affidavit alleges that he consistently "communicated the [PIP] milestones to Ms. Sarrat" and "asked questions and sought

14

clarification" during a May 29, 2019 meeting with Sarrat, but, overall, he "felt as though [Sarrat] was setting me up to fail." *Id.* at 7. Plaintiff also details over twenty-five specific tasks that he completed as assigned on the PIP. *Id.* at 5–7.[3] Certain of Sarrat's testimony also undermines that Defendant concluded that Plaintiff failed to fulfill his PIP obligations. For example, Sarrat testified, "we never got to the point of discussing the outcome of his PIP because he was not open to any discussion." ECF No. 34-3, Ex. A-1 at 44.

Further, Plaintiff provides evidence apart from his affidavit that he attempted to comply with the PIP and sought guidance on its requirements. On the signed April 5th PIP, Plaintiff wrote, "After reviewing Action Plan over phone, I'm still confused on behavior and Action Plans I need to Improve," noting that he was only signing "under duress." ECF 34-8, Ex. B-5 at 4. Likewise, in an April 8, 2019 email, Plaintiff details "ask[ing] for clarity" on the PIP, but notes, "[w]hile asking for examples it sounded like the issues were more of a personal nature and not an assessment of my actions." ECF No. 34-2, Ex. A-1 at 32. Indeed, Defendant's motion for summary judgment concedes that Defendant created an Amended PIP "to provide [Plaintiff] additional information he requested as to what was expected of him," citing to Sarrat's own testimony that Plaintiff communicated that "he did not understand the PIP, and that he needed more clarity." ECF No. 32 at 3-4; ECF No. 32-3, Ex. B at 46. Such evidence undermines Defendant's argument that Plaintiff refused to participate in the PIP process.

As detailed more fully above, Plaintiff also provides evidence that Defendant's legitimate reasons are unworthy of credence by identifying age-based animus directed at Plaintiff by his direct supervisor, Sarrat. *Reeves*, 530 U.S. at 147 (noting that disbelief of the defendant's reasons,

---

[3] In its reply, Defendant argues that Plaintiff's affidavit alone is insufficient to avoid summary judgment. ECF No. 36 at 4. However, the Fifth Circuit has held that sworn affidavits are "certainly appropriate for review on a Rule 56 motion for summary judgment." *EEOC v. WC&M Enters.*, 496 F.3d 393, 398 (5th Cir. 2007). As detailed below, Plaintiff also does not rely exclusively on his affidavit to demonstrate compliance with the PIP.

together with the plaintiff's prima facie case, may be sufficient to show pretext "particularly if disbelief is accompanied by a suspicion of mendacity"). Specifically, Plaintiff i) identified ageist comments made by Sarrat and ii) explained how Sarrat departed from Foot Locker's evaluation requirements by assigning Plaintiff the lowest possible score of "N," despite him only receiving an "N" in one of many categories. Given Plaintiff's evidence discrediting Defendant's official explanation of the termination, a reasonable jury could conclude from the evidence that the age-based animus of Plaintiff's direct supervisor was the true but-for cause of Plaintiff's termination. *See Goudeau*, 793 F.3d at 477 (finding that doubts raised about the defendant's justification, "combined with the ageist comments" that the plaintiff put forward, "would allow a jury to conclude that age was the reason for the termination").

Accordingly, the Court **DENIES** Defendant's motion for summary judgment with respect to age discrimination claims under the ADEA.

### b. ADEA Retaliation

To establish retaliation under the ADEA, a similar standard governs. *See* 29 U.S.C. § 623(d). A plaintiff must first establish a prima facie case by showing "(1) that [he] engaged in a protected activity, (2) that there was an adverse employment action, and (3) that a causal link existed between the protected activity and the adverse employment action." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496–97 (5th Cir. 2015) (citing *Holtzclaw v. DSC Communs. Corp.*, 255 F.3d 254, 259 (5th Cir. 2001)). "With regard to the first element, a plaintiff has engaged in protected activity if he has 'opposed any practice' forbidden by the ADEA." *Heggemeier v. Caldwell Cty., Tex.*, 826 F.3d 861, 869 (5th Cir. 2016). For the third element of the prima facie case, the causal link at the *prima facie* stage does not require "but for" causation. *See Long v.*

*Eastfield College*, 88 F.3d 300, 305 n. 4 (5th Cir. 1996) (finding that the "causal link" element of a Title VII retaliation claim "is much less stringent" than the ultimate but-for requirement).[4]

The burden then shifts back to defendant (as described above). *See, e.g., Paulissen v. MEI Techs., Inc.*, 942 F. Supp. 2d 658, 672 (S.D. Tex. 2013). Once the defendant has met this burden, the burden shifts back to the plaintiff who must demonstrate that the proffered reason is a pretext for age discrimination. *Id.*

### 1.   The Prima Facie Case

The Court finds that Plaintiff easily satisfies the first two elements of his prima facie case. Plaintiff engaged in a protected activity when he articulated age discrimination concerns to his direct supervisor, Sarrat, and FEP Manager, Miller, in the April 8, 2019 email, stating "my belief is that my age and tenure are a factor to your letter and review. I feel discriminated, intimidated, and retaliated." ECF No. 34-2, A-1 at 32. *See Allen v. Envirogreen Landscape Professionals, Inc.*, 721 F. App'x 322, 326 (5th Cir. 2017) ("In a claim of protected opposition, an employee must at least have referred to conduct that could plausibly be considered discriminatory in intent or effect, thereby alerting the employer of its discriminatory practices."). Plaintiff also identifies his termination as an adverse employment action.

Even at the less demanding prima facie stage, however, Plaintiff fails to advance evidence sufficient to establish the causal link between his age discrimination complaint and his termination. Here, Defendant initiated the disciplinary process that resulted in Plaintiff's termination before Plaintiff engaged in any protected activity. Specifically, Defendant placed Plaintiff on a 60-day PIP and informed him that he risked termination on April 5, 2019, three days *before* Plaintiff first articulated his age discrimination concerns. ECF No. 32 at 3, 6. Plaintiff was then ultimately

---

[4] *See English v. Perdue*, 777 Fed. App'x. 94, 98 (5th Cir. 2019) (finding that a "retaliation claim under the ADEA entails the same showing" as a retaliation claim under Title VII).

terminated on June 19, 2019—slightly more than 60 days after Defendant received his Amended

PIP on April 12, 2019. *Id.* at 5. Given this timeline, Plaintiff fails to establish that he was terminated

because of his age discrimination complaint and not the pre-existing PIP.[5] *See Hebert v. Unum*

*Group*, No. 4:18-CV-00910-SDJ-KPJ, 2020 WL 7074706, at *25 (E.D. Tex. Sept. 11, 2020)

(finding that where the protected activity occurred after the launch of an investigation that

concluded the appropriateness of termination, plaintiff failed to establish retaliation claim), *report*

*and recommendation adopted*, 2020 WL 5834241 (E.D. Tex. Sept. 30, 2020); *see also Mayberry*

*v. Mundy Contract Maint*, No. Civ.A. H–03–5221, 2005 WL 1965956, at *9 (S.D. Tex. Aug. 16,

2005) (finding no causal connection where plaintiff "would have been fired whether or not he had

lodged an internal race discrimination claim").

Plaintiff attempts to overcome this fatal problem by identifying how Foot Locker departed

from its standard procedures upon receiving Plaintiff's age discrimination complaint. *See Nowlin*

*v. Resolution Trust Corp.*, 33 F. F3d 498, 508 (5th Cir. 1994) (noting that courts consider whether

"the employer followed its typical policy and procedures in terminating the employee" when

evaluating causation in retaliation cases). Plaintiff explains that Defendant's Rule 30(b)(6)

corporate representative testified that upon receiving an allegation of discrimination, Foot Locker

assigns a counselor, records the matter in a case management system, and assigns it a case number.

ECF No. 34-20, Ex. G at 30–31. Plaintiff argues that Defendant instead opened an investigation

into his performance at Sarrat's behest, ultimately leading to his termination. ECF No. 34 at 10–

13. As evidence of this claim, Plaintiff points to Defendant's investigation file opened on May 14,

2019—over a month after Plaintiff sent his age discrimination complaint—which identifies the

"Subject" of the investigation as "RVP Feels [Plaintiff] is not performing up to his standards" and

---

[5] Plaintiff's argument that the timing between his age discrimination complaint (April 8, 2019) and his termination (June 19, 2019) is sufficiently close to meet the causation burden at the prima facie stage fails for the same reason.

the "Source of Inquiry" for the investigation being an email from Sarrat. ECF No. 32-11, Ex. L at 2.

But Plaintiff's briefing acknowledges the evidence on record demonstrating that Defendant took steps to investigate Plaintiff's age discrimination concerns. For example, Plaintiff concedes that Burns asked all District Managers under Sarrat's supervision questions about her statement that she had a "young DMIT [District Manager in Training] willing to take over any of your positions." ECF No. 34 at 12; ECF No. 32-12, Ex. L at 5. After also questioning every Store Manager in Plaintiff's region, Burns wrote to Miller, "I do not feel there is enough to substantiate wrong doing on [Sarrat's] end. If anything, possibly a coaching on perception." ECF No. 32-12, Ex. L at 2–3. The investigation file itself notes that after Burns sent a "no findings" conclusion regarding Plaintiff's age discrimination concerns on June 6, 2019, the reason for Defendant's "termination" was "for work performance." *Id.* at 2.

In short, Plaintiff has failed to identify evidence that his protected activity triggered a "sham" investigation that ultimately culminated in his termination. *See Gregory v. Tex. Youth Comm'n*, 111 Fed. App'x. 719, 721 (5th Cir. 2004) (finding "unsubstantiated allegations" insufficient to establish causal link between protected activity and adverse employment action in retaliation claims). Where Plaintiff fails to link this investigation to his termination and the concurrent PIP began before Plaintiff engaged in any protected activity, the Court cannot allow retaliation claims to proceed at the summary stage judgement stage. *See Pena v. Golden Corral Corp.*, No. 4:18-CV-00671, 2019 WL 2297567, at *4 (S.D. Tex. May, 2019) (finding no causal link exists where plaintiff's termination came promptly after an investigation was completed such that "it appears reasonable that the plaintiff would have been terminated regardless of her filing a complaint").

### 2. The Legitimate Basis

Further, even if the Court concluded that Plaintiff had met his burden to present a prima facie case of retaliation and continued with the *McDonnell Douglas* test, Plaintiff's retaliation claim would still fail. As already discussed, at the second stage of this test, Defendant sufficiently stated legitimate, non-discriminatory reasons for terminating Plaintiff—Plaintiff's alleged poor performance and failure to comply with the PIP— shifting the burden back to Plaintiff.

### 3. The Pretext Showing

At the final stage of the *McDonnell Douglas* test, Plaintiff "bears the ultimate burden of showing that the proffered reasons are a pretext for retaliation, by demonstrating that the adverse employment action would not have occurred 'but for' the employee's participation in the protected activity." *Smith v. Ridge*, No. H-03-5864, 2005 WL 6443884, at *6 (S.D. Tex. Feb. 8, 2005) (citing *Grizzle v. Travelers Health Network*, 14 F.3d 261, 267 (5th Cir. 1994). In other words, in order to avoid summary judgment, Plaintiff must show a "a conflict in substantial evidence" on this question of whether the employer would not have taken the action "but for" Plaintiff complaining of age discrimination. *Leija v. Alamo Cmty. Coll. Dist.*, NO. SA-16-CV-01138-FB, 2018 WL 11471630, at *7 (W.D. Tex. Aug. 9, 2018). Plaintiff cannot meet this high burden for the reasons identified above. He presents the Court with no evidence—beyond noting various ways in which Defendant departed from its stated policies—to explain how Defendant's investigation following his age discrimination complaint influenced the decision to terminate him.

Accordingly, the Court **GRANTS** Defendant's motion for summary judgment with respect to Plaintiff's retaliation claim.

### c.   Hostile Work Environment Claim

At the February 9, 2024 hearing on this motion, Plaintiff informed the Court that he would no longer be pursuing his age-based hostile work environment claim. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment with respect to this claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 32) is **GRANTED IN PART** and **DENIED IN PART.** Plaintiff's ADEA retaliation and hostile work environment claims are **DISMISSED WITH PREJUDICE**. Plaintiff's ADEA age discrimination claim remains pending.

It is so **ORDERED**.

**SIGNED** this 12th day of February, 2024.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE